In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1628

TROY R. SHAW,

*Petitioner-Appellant*,

*v.*

BILL WILSON,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:09-cv-325-JMS-WGH—**Jane E. Magnus-Stinson**, *Judge.*

ARGUED APRIL 30, 2013—DECIDED JULY 24, 2013

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* Troy Shaw and two other men were arrested and charged by the State of Indiana in an information with aggravated battery after Brett King was beaten to death outside a motel in Fort Wayne. Shaw denied participating in King's beating, but the other two men, in exchange for prison sentences of under three years, agreed to plead guilty to voluntary manslaughter and to testify against Shaw. The state then

moved to amend the information to elevate the charge against Shaw from aggravated battery to murder. The trial court granted the state's motion over Shaw's objection that the murder charge was barred by an Indiana statue that limits the time for amending charging documents. Shaw was convicted after a jury trial and sentenced to 60 years in prison.

On direct appeal, Shaw's new lawyer abandoned trial counsel's contention that the information was amended too late and instead pressed a futile claim that the evidence against Shaw was insufficient to support his conviction. Not surprisingly, the appellate court was unpersuaded; appellate counsel dropped the case at that point and did not file a petition to transfer with the Supreme Court of Indiana. Shaw persisted with a petition for post-conviction relief in the Indiana courts, but that too failed all the way up the line to the state supreme court. Shaw then turned to the federal court with a petition under 28 U.S.C. § 2254. There he argued again that his appellate lawyer's decision to forgo challenging the validity of the amended information in favor of a frivolous sufficiency challenge constituted ineffective assistance of counsel in violation of the Sixth Amendment. The district court denied relief, but we conclude—with full cognizance of the high bar that such a case must clear—that the Indiana appellate court's decision to the contrary is an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), and the elaboration on *Strickland* of *Smith v. Robbins*, 528 U.S. 259 (2000). We therefore vacate the judgment of the district court and remand with instructions to issue

a writ of habeas corpus unless the State of Indiana grants Shaw a new direct appeal in which he will have the opportunity to advance the argument that his appellate counsel should have raised.

# I

## A. Offense and Trial

Shaw was 18 years old and had just finished high school at the time of the deadly attack that landed him in prison. Days earlier, he had been recruited to sell magazine subscriptions as part of a traveling sales team, and he arrived in Fort Wayne, Indiana, with the team on June 5, 2000. The trouble began when his boss, Eric Werczynski, rented several motel rooms for the group and in one of those rooms encountered and confronted Brett King, an uninvited stranger. King fled, but as he ran away from the motel, Werczynski yelled to his employees, "Get the motherfucker!" Two of them, Steven Johnson and Chris Starling, obliged, chasing King down and knocking him into a ditch. Several other team members then joined Johnson and Starling in punching and kicking King. He died in the ditch from multiple blows to his head.

The attackers had disbanded by the time police arrived, but Johnson, Shaw, and a third team member, Benjamin Brooks, were arrested and charged with aggravated battery. Shaw denied even being present during the fatal beating, but Johnson and Brooks admitted participating, and at some point they told authorities that

Shaw had been the most aggressive of the attackers. The two negotiated sentences of two and a half years in prison (eight-year sentences with five and half of those years suspended) in exchange for pleading guilty to involuntary manslaughter and agreeing to testify against Shaw.

After Johnson and Brooks cut their plea deal, the state moved to amend the information to charge Shaw with murder rather than aggravated battery. His trial lawyer objected on the basis of Indiana Code § 35-34-1-5 (1982), a statute that had long limited prosecutors' discretion to amend pending charges. The version of the statute then in effect specified that an amendment of "substance" could be made up to 30 days before the "omnibus date" (defined by state law as "a point in time from which various deadlines . . . are established," I.C. § 35-36-8-1), and an amendment of mere "form" could be made even later if not prejudicial. Because the precise language of the 1982 version of the statute is important to Shaw's case, we set out the relevant portions here:

> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:
>
>   (1) thirty (30) days if the defendant is charged with a felony; or
>
>   (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors; before the omnibus date. When the information or indictment is

amended, it shall be signed by the prosecuting attorney.

(c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense.

I.C. § 35-34-1-5 (1982).

Although no Indiana appellate court ever had invalidated an amendment under the 1982 law, in 1998 in *Haak v. Indiana*, 695 N.E.2d 944, 951 (Ind. 1998), the Indiana Supreme Court held unequivocally that if an amendment "was of substance, or prejudicial to the defendant even if of form, it was impermissible under the statute" from 30 days before the omnibus date. Shaw's omnibus date was July 31, 2000, and the amendment was not proposed until 17 months later. Nevertheless, despite the three-year-old precedent in *Haak*, the trial court granted the state's motion. Shaw's attorney then asked

for a continuance to permit time to prepare a defense to the murder charge, and he was given two months.

At trial, Johnson and Brooks both testified that Shaw had kicked King in the head repeatedly and viciously. In his defense, Shaw called an inmate who had shared a jail cell with Brooks. The inmate testified that he overheard Brooks on the telephone blaming his boss, Werczynski, for the fatal blows to King's head. (According to media reports, Werczynski and Starling were not charged with a crime until after Shaw's conviction, at which point they were charged, respectively, with "aiding battery" and "assisting a criminal." Starling pleaded guilty and was sentenced to serve 18 months in prison. Werczynski was convicted at trial and sentenced to six years, of which he was expected to serve under three. See Sara Eaton, *5th Salesman Gets 6 Years for Role in Motel Slaying*, FORT WAYNE J. GAZETTE (Aug. 12, 2003).) Shaw testified as well, insisting that he had gone to sleep rather than follow the crowd to the ditch where King was killed. The jury believed Johnson and Brooks and found Shaw guilty of murder.

A public defender, Gregory Miller, handled Shaw's appeal and settled on a single appellate argument: The prosecution's evidence was insufficient to support the jury's verdict. Miller filed a short brief in which he observed that "there is conflicting testimony as to whether the Defendant, Troy Shaw, was in the ditch where Brett King was murdered." This observation was both true and catastrophic for Shaw's appeal; it amounted to a concession that the appeal was doomed because

Indiana courts (like federal courts) must resolve all evidentiary conflicts in the prosecution's favor, and they must reject a sufficiency challenge unless no "reasonable trier of fact" could have found the defendant guilty. See *Jackson v. Indiana*, 925 N.E.2d 369, 375 (Ind. 2010). Shaw's conviction was affirmed in a short opinion deferring to the jury's assessment of the witnesses' credibility. See *Shaw v. Indiana*, No. 02A03-0205-CR-132 (Ind. Ct. App. May 7, 2003).

### B. *Fajardo v. Indiana*

Roughly four years after Shaw lost his direct appeal, the Indiana Supreme Court revisited the issue of untimely amendments of substance in *Fajardo v. Indiana*, 859 N.E.2d 1201 (Ind. 2007). The trial court in that case had allowed the prosecution to add a second count of child molestation to the information after it concluded that the amendment would not prejudice the defendant. Tellingly, the Indiana Supreme Court reversed and confirmed that it meant what it had said in *Haak* about the proper reading to be given to I.C. § 35-34-1-5. Citing *Haak* and declaring that "the statute is clear," the court concluded that "[b]ecause the challenged amendment in this case sought to modify the original felony information in matters of substance, it was permissible only up to thirty days *before* the omnibus date," regardless of prejudice. *Id.* at 1207-08. As a result, the court vacated the defendant's second conviction. *Id.* at 1208.

The state supreme court noted in *Fajardo* that for decades Indiana law had strictly limited prosecutors'

discretion to amend pending charges. Indeed, under the 1970s version of the statute, amendments of substance were prohibited entirely after arraignment. The court also observed that decisions applying the 1982 version of the statute had been "inconsistent and conflicting." *Id.* at 1205-07. Appellate panels, it acknowledged, had disregarded the language of the statute even after *Haak*, and one of the supreme court's own post-*Haak* decisions, *Brown v. State*, 728 N.E.2d 876, 879-80 (Ind. 2000), was problematic because it conflated the issue of prejudice with the question of substance versus form. See *id.* at 1206-07, 1207 n.9. The amendment in *Brown*, however, was determined to be one of form rather than substance, and so the analysis, though confused, did not contradict *Haak*'s pronouncement about substantive amendments.

After *Fajardo* was decided, the Indiana legislature repudiated the decision by amending the statute to allow substantive amendments to charging documents at any time before trial if not prejudicial. See I.C. § 35-34-1-5(b) (2007); Joel M. Schumm, *Recent Developments in Indiana Criminal Law and Procedure*, 41 IND. L. REV. 955, 955-56 (2008).

### C. State Postconviction Proceedings

After his conviction was upheld on direct appeal, Shaw filed a postconviction petition in state court in which he asserted that his appellate lawyer's performance had been deficient and prejudicial in that he abandoned

trial counsel's promising challenge to the validity of the amended information. Invoking the two-part analysis of *Strickland v. Washington*, 466 U.S. 668 (1984), Shaw argued that omitting the claim under Section 35-34-1-5 constituted deficient performance because that claim was significantly stronger than the sufficiency challenge that appellate counsel actually made. With respect to prejudice, Shaw contended that the abandoned claim likely would have succeeded if made, and his conviction, like the defendant's in *Fajardo*, would have been vacated.

The trial court rejected Shaw's petition, and he appealed to the Court of Appeals of Indiana. That court conceded that attorney Miller possibly could have argued that the text of Section 35-34-1-5 "required the amendment to be dismissed, as was argued in *Fajardo*," though the court also stressed that case law was mostly against him. *Shaw v. Indiana*, 898 N.E.2d 465, 470 (Ind. App. Ct. 2008). Some decisions of the state supreme court "included *dicta* indicating an amendment of substance would be invalidated if it was untimely," the court explained, but no amendment actually had been invalidated under the 1982 version of the statute. *Id.* Instead, the court continued, "a long line of Indiana decisions" had treated amendments of substance and form identically, and attorney Miller had testified during a hearing on Shaw's petition that he was unaware of any authority that would have supported a challenge to the amended information. *Id.* Under these circumstances, the court reasoned, the trial court correctly found that Miller's performance was not deficient. (Unfortunately, no transcript of Miller's testimony was included in the record,

and so we do not know whether he even familiarized himself with the objection that trial counsel had made, or if he indicated awareness of *Haak*. According to one of Shaw's state-court filings, Miller testified that "he could not recall whether he had considered raising the issue, or even whether he had realized that the Charging Information had been amended.") Touching on the issue of prejudice, the state court said only that "appellate counsel would not have been able to demonstrate prejudice because Shaw had been granted a continuance to prepare for trial." *Id.*

### D. Federal District Court

After the Indiana Supreme Court declined to hear Shaw's appeal, he filed his petition under 28 U.S.C. § 2254 in which he carries forward his argument that the Indiana appellate court unreasonably applied *Strickland v. Washington* to his claim of ineffective assistance of appellate counsel. The district court, emphasizing the deference to be given state courts under the Antiterrorism and Effective Death Penalty Act (AEDPA), asked "'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Shaw v. Mize*, No. 2:09-cv-325-JMS-WGH, 2012 WL 527454, at *2 (S.D. Ind. Feb. 16, 2012) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011)). It concluded that such an argument could be imagined, if one were to accept the Indiana appellate court's premise that, before *Fajardo*, the support in Indiana law for the claim that succeeded in that case was so weak that no lawyer was

obliged to make the argument on behalf of any client. *Id.* at *3.

## II

Under *Strickland v. Washington*, attorney Miller's representation of Shaw cannot be found to be constitutionally ineffective unless (1) his performance was deficient, meaning it fell below an "objective standard of reasonableness" informed by "prevailing professional norms" and (2) his deficient performance prejudiced Shaw, meaning that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. In evaluating an attorney's performance, courts must defer to any strategic decision the lawyer made that falls within the "wide range of reasonable professional assistance," *id*. at 689, even if that strategy was ultimately unsuccessful. And because of AEDPA an extra layer of deference enters the picture: we will defer to the Indiana appellate court's determination that Shaw received effective assistance of counsel unless that determination is contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *Richter*, 131 S. Ct. at 783-84. An application of Supreme Court precedent is reasonable—even if wrong in our view—so long as fairminded jurists could disagree over its correctness. *Id.* at 786. The combination of *Strickland* and Section 2254(d) requires deference upon deference from federal courts

reviewing the constitutionality of state criminal convictions. *Id.* at 788.

Before delving into the merits of this case, we must address the state's opening argument: that this court is entirely prohibited from evaluating the Indiana appellate court's assessment of Shaw's claim because that claim involves a question of state law. As the state correctly observes, federal courts are not permitted to review a state court's resolution of state-law questions. *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010). Moreover, although claims of ineffective assistance of counsel can be premised on an attorney's failure to raise state-law issues, see *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *McNary v. Lemke*, 708 F.3d 905, 920 (7th Cir. 2013); *Goff v. Bagley*, 601 F.3d 445, 464 (6th Cir. 2010)*; Mason v. Hanks*, 97 F.3d 887, 892-94 (7th Cir. 1996), federal courts reviewing such claims must defer to state-court precedent concerning the questions of state law underlying the defendant's ineffectiveness claim, *George v. Smith*, 586 F.3d 479, 483-84 (7th Cir. 2009); *Huusko v. Jenkins*, 556 F.3d 633, 637 (7th Cir. 2009); *Cole v. Young*, 817 F.2d 412, 416 (7th Cir. 1987).

The state's argument, however, misses the point that Shaw is making. Shaw is not asking (and has no reason to ask) that we second-guess an Indiana court on the meaning of Section 35-34-1-5. Shaw is making a simpler point: a competent lawyer in Indiana should have recognized that there was a state statute under which relief for his client was possible and would have pursued that theory on appeal. An argument about

the validity of the state's effort to amend the indictment would have been materially stronger than the frivolous sufficiency-of-the-evidence point that Miller raised. With that much accepted, there is no further role for the federal judiciary: whether the Indiana appellate court would have been persuaded, or if not, whether the Indiana Supreme Court would have granted transfer, is immaterial. The state's argument that even this kind of comparative assessment is out of bounds, if accepted, would foreclose federal review of almost any ineffectiveness claim that rests on an attorney's mishandling of a state-law issue, no matter how egregiously deficient the attorney's performance. It is well established that a defense attorney's failure to raise a state-law issue can constitute ineffectiveness. "[T]he constitutional right to counsel, and its derivative right that counsel be at least minimally effective, is unrelated to the source—whether state or federal—of the defendant's defenses. To argue otherwise would be to attempt to resurrect an argument that the Supreme Court implicitly rejected more than half a century ago, when it held that the Fourteenth Amendment entitled capital defendants who had, so far as appears, no federal defenses to the assistance of counsel." *Fagan v. Washington*, 942 F.2d 1155, 1158 (7th Cir. 1991) (citing *Powell v. Alabama*, 287 U.S. 45, 71-72 (1932)).

### A.  Deficient Performance

Appellate lawyers are not required to present every nonfrivolous claim on behalf of their clients—such a

requirement would serve to bury strong arguments in weak ones—but they *are* expected to "select[] the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983). For this reason, if Miller abandoned a nonfrivolous claim that was both "obvious" and "clearly stronger" than the claim that he actually presented, his performance was deficient, unless his choice had a strategic justification. See *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (approving this court's "clearly stronger" inquiry); see also *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010); *Caver v. Straub*, 349 F.3d 340, 348 (7th Cir. 2003); *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003); *Cargle v. Mullin*, 317 F.3d 1196, 1202-03 (10th Cir. 2003); *Winters v. Miller*, 274 F.3d 1161, 1197 (7th Cir. 2001). This standard is difficult to meet because the comparative strength of two claims is usually debatable. But *Smith* confirms that the theory is available. 528 U.S. at 288. We evaluate Miller's performance from the perspective of a reasonable attorney at the time of Shaw's appeal, taking care to avoid "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

We conclude that this is one of the rare cases in which counsel's performance fell below the constitutional minimum, and that the Indiana appellate court's conclusion otherwise was an unreasonable application of Supreme Court precedent. Particularly given the concession that the evidence could support either conviction or acquittal, the sufficiency argument that Miller made on Shaw's behalf was so weak that pursuing it was the equivalent of filing no brief at all. While sufficiency challenges always place "an extremely difficult burden" on

the defendant because the evidence is viewed in the light most favorable to the verdict, *United States v. Hosseini*, 679 F.3d 544, 557 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 623 (2012), the argument Miller presented was a certain loser. We suspect this exercise in futility was effectively a substitute for an *Anders* brief, see *Anders v. California*, 386 U.S. 738 (1967), because in Indiana appellate attorneys must "submit an ordinary appellate brief . . . no matter how frivolous counsel regards the claims to be," *Mosley v. State*, 908 N.E.2d 599, 608 (Ind. 2009). Because Miller made a single argument that any reasonable lawyer would have recognized as dead on arrival, we have a situation close to the one described in *Smith v. Robbins*, where counsel erroneously refrains from filing a merits brief at all. 528 U.S. at 288. In that situation, the Court held, the defendant need show only that "a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief." *Id.* The same rule should obtain if counsel raises only an entirely frivolous argument and passes by another that is genuinely arguable under the governing law.

That a claim challenging the validity of the amended information would have been "obvious" at the time of Shaw's direct appeal is beyond question. Miller should have learned of the potential claim while reviewing the trial record because trial counsel carefully preserved it by objecting (and, as Indiana case law requires, requesting a continuance, see *Kidd v. Indiana*, 738 N.E.2d 1039, 1041-42 (Ind. 2000)). Trial counsel's preservation of a claim can make it obvious. See *Suggs*

*v. United States*, 513 F.3d 675, 678 (7th Cir. 2008) (finding challenge to improperly admitted evidence to be obvious because trial counsel had objected to the admission and described the issue in a "pre-appeal brief letter"); *Mason v. Hanks*, 97 F.3d 887, 894 (7th Cir. 1996) ("That this issue was an obvious one to raise on appeal is beyond dispute. Mason's lawyer had, of course, objected to [the hearsay statements] at trial."). Considering in addition the language of I.C. Section 35-34-1-5 (1982) and the fact, stressed by Shaw, that dozens of similar (though unsuccessful) challenges were documented in published opinions, Miller's abandonment of the objection to the amended information cannot be excused on the basis that the claim was obscure or novel.

Nor can Miller's abandonment of that claim be excused on the basis that it would not have appeared promising enough. This is a relative inquiry, and there is no doubt that the amendment challenge had significantly more promise than the sufficiency argument. The amendment issue, far from being frivolous, had a better than fighting chance at the time of his 2002 appeal considering the text of Section 35-34-1-5 and the 1998 statement in *Haak* that "if the amendment was of substance . . . it was impermissible under the statute" from 30 days before the omnibus date. 695 N.E.2d at 951. Shaw also cites other cases from the Indiana Supreme Court that he says would have supported a challenge to the amended information at the time of his appeal. The most compelling among them are *Wright v. Indiana*, 593 N.E.2d 1192, 1197 (Ind. 1992), and *Sharp v. Indiana*, 534 N.E.2d 708, 714 (Ind. 1989), which both include declara-

tions that a charging document cannot be amended to change the "identity of the offense" after the deadline in Section 35-34-1-5. Similar statements are made in appellate cases. See, *e.g.*, *Taylor v. Indiana*, 677 N.E.2d 56 (Ind. Ct. App. 1997) ("The amendment here did not change the theory of the case, change the identity of offense charged, or cause prejudice to Taylor's substantial rights. Therefore, the amendment of the information in this case was not error.").

The state counters that the Indiana Supreme Court's reading of Section 35-34-1-5 in *Fajardo* sharply diverged from that court's prior understanding of the statute in *Haak* and thus was a radical change in the law, not a clarification. But that line of argument implicitly draws us into the content of state law, and we have emphasized that this is forbidden territory. Once again, it is necessary only to conclude that the amendment issue was clearly stronger than the sufficiency argument, and we have no trouble coming to that conclusion based on both the language of the statute and the Indiana Supreme Court's *Haak* decision.

Defense attorneys, it is true, are generally not obliged to anticipate changes in the law, see *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), but in some instances they are obliged to make an argument that is sufficiently foreshadowed in existing case law. See *Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010) ("'[C]ounsel's failure to raise an issue whose resolution is clearly fore-shadowed by existing decisions might constitute inef-

fective assistance of counsel.'") (quoting *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999)); *Larrea v. Bennett*, 368 F.3d 179, 183 (2d Cir. 2004) ("To determine whether reasonable counsel would have predicted the *Antommarchi* outcome and objected to the trial court's supplemental *Allen* charge, we must examine the extent to which prior cases foreshadowed the *Antommarchi* holding."). In *Haak*, the Indiana Supreme Court did more than foreshadow *Fajardo*; the court explicitly stated the same rule that it later would apply in *Fajardo*. Although Indiana appellate courts resisted that clear statement until *Fajardo* was decided, see, *e.g.*, *Townsend v. Indiana*, 753 N.E.2d 88 (Ind. App. Ct. 2001) (discounting *Haak*); *Davis v. State*, 714 N.E.2d 717, 721 (Ind. Ct. App. 1999) (same), the fact that an intermediate court likely would have rejected the argument at the time of Shaw's appeal is no excuse not to make it, see *Mayo*, 13 F.3d at 533-34 ("[A]ttorney's omission of a meritorious claim cannot be excused simply because an intermediate appellate court would have rejected it."); *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989) (holding that appellate counsel was obliged to raise a challenge that, although likely to be rejected by the appellate court, ultimately would have been successful in the state supreme court).

The state also stresses that Shaw cannot point to a single published case before *Fajardo* in which an Indiana appellate court invalidated *any* amended information in reliance on the 1982 version of Section 35-34-1-5, suggesting that Miller rightly would have viewed a challenge as a waste of time. But the state is looking at only half the picture. As Shaw points out, it has not identified

(nor have we found) any published case in which a charge had been elevated to murder from something lesser after the statutory deadline passed (though such an amendment would be permissible if new evidence were to come to light, see *Warner v. State*, 773 N.E.2d 239, 243 (Ind. 2002)), and this dearth should have suggested to Miller that the amendment in Shaw's case was unusual and distinguishable from those that had been upheld. Moreover, Section 35-34-1-5 was not a dead letter. Some trial courts did disallow untimely amendments, and appellate courts thwarted prosecutorial attempts to get around those rulings by dropping the original charges and refiling more serious ones. See, *e.g.*, *Davenport v. Indiana*, 689 N.E.2d 1226, 1230 (Ind. 1997) (vacating conviction where the state had "received an adverse ruling in the original trial court on its [untimely] motion to amend the information . . .[and so] dismissed the case and filed a second information" in another court); *Indiana v. Klein*, 702 N.E.2d 771, 772, 776 (Ind. Ct. App. 1998) (affirming dismissal of charges that were filed "solely to circumvent the court's [previous] order refusing [an] amendment" that was untimely).

The bottom line is that attorney Miller was faced with two potential arguments, one undeniably frivolous and the other solidly based on a state statute and reinforced by the Indiana Supreme Court's pronouncement in *Haak*. In the face of this choice, Miller opted for the hopeless sufficiency challenge. The record reveals no strategic reason for his choice of arguments, and in any case "[n]o tactical reason . . . can be assigned for [his] failure to raise the only substantial claim[] that" Shaw

had. See *Fagan*, 942 F.2d 1155 at 1157; *cf. Smith v. Murray*, 477 U.S. 527 (1986) (concluding that appellate counsel who did not raise a claim that was questionable under Virginia law but did raise 13 more-promising claims was not deficient). Fairminded jurists who have the proper standard in mind can conclude only that Miller's performance fell short of what *Strickland v. Washington* and *Smith v. Robbins* require, and that the Indiana appellate court's conclusion to the contrary was an unreasonable application of Supreme Court precedent.

## B. *Prejudice*

On the question of prejudice, the Indiana appellate court said simply that Shaw, because he was given extra time to prepare for trial, was not prejudiced by the court's granting of the prosecution's motion to amend. But that takes too narrow a view of the matter. *Strickland* requires us to ask whether there is "a reasonable probability that, but for [Miller's] unprofessional errors, the result of [Shaw's direct appeal] would have been different," see 466 U.S. at 694. In assessing prejudice, we must bear in mind once again that we are making a comparative inquiry about counsel's choices; we are not resolving any issue of state law, and we are not telling the Indiana judiciary how it should approach this issue. Prejudice exists, however, if counsel bypassed an nonfrivolous argument that, if successful, would have resulted in the vacation of Shaw's conviction (just as the conviction in *Fajardo* later was). If one is entitled to a dismissal, a continuance is no comfort. And when

evaluating prejudice, unlike when evaluating attorney performance, hindsight is permissible. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007); *Eddmonds v. Peters*, 93 F.3d 1307, 1326 n.5 (7th Cir. 1996). This means that the Indiana Supreme Court's ultimate decision in *Fajardo* is relevant to whether the argument Miller jettisoned was both nonfrivolous and stronger than the sufficiency argument he presented.

The state posits that the amendment to the information in Shaw's case may have been one of mere form. If that were undisputably so, then the amendment theory too would have been dead on arrival. But counsel had a strong argument that this particular amendment was substantive. After all, the amendment elevated a charge from aggravated battery, I.C. § 35-42-2-1.5, to murder, *id.* § 35-42-1-1—thereby increasing the possible sentence more than threefold, see *id.* §§ 35-50-2-5 (aggravated battery, a class B felony, is punishable by 6 to 20 years in prison) and 35-50-2-3 (murder is punishable by 45 to 65 years). The state argues that in the final analysis the state courts might have concluded otherwise, quoting the Indiana Supreme Court's comment that "[i]f the defense under the original information would be equally available after the amendment is made and the accused's evidence would be equally applicable to the information in one form as in the other, the amendment is one of form and not of substance. An amendment is of substance only if it is essential to the making of a valid charge of the crime." *Sharp v. State*, 534 N.E.2d 708, 714 (Ind. 1989). But once again, Shaw's theory does not

turn on the ultimate outcome in the state courts; it depends only on the relative strength of this argument over the one counsel chose. The argument that the amendment was substantive is not frivolous. The state supreme court offered its statement in *Sharp* in the context of an amendment that did *not* change the identity of the offense charged; counsel thus could have argued that *Sharp* does not apply to an amendment that substitutes one offense for another. More importantly, in rejecting Shaw's postconviction petition, neither the Indiana appellate court nor the trial court suggested that the amendment was not substantive.

The state also touches on, but does not develop, another argument that Shaw cannot show prejudice. This one is based on the Indiana legislature's decision in 2007 to amend Section 35-34-1-5 in the wake of *Fajardo.* The statute now treats amendments of substance the same as amendments of form. The line of cases following *Lockhart v. Fretwell*, 506 U.S. 364 (1993), and *Nix v. Whiteside*, 475 U.S. 157 (1986), stand for the proposition that *Strickland* prejudice cannot be established if counsel's deficiency was in not making a claim that, although valid at the time of trial or appeal, has since been rejected. The rationale is that defendants must not "receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law." *Lafler v. Cooper*, 132 S. Ct. 1376, 1386-87 (7th Cir. 2012).

But *Fretwell* and *Nix* do not foreclose a finding of prejudice in Shaw's case. A legislative repeal of a statute does not present the same situation as the one in which

a court mistakenly recognizes a right for some period of time and then corrects itself (or is corrected by a reviewing court). The Fifth Circuit has explained the distinction: "[A] case that has been overruled is not authoritative in all pending and subsequent litigation whereas a duly-enacted statute conferring procedural or substantive rights entitles its beneficiaries to those rights for the period in which it is validly operating. Unlike the benefit in *Fretwell*, a state statute is not an error, misapprehension, or 'right the law simply does not recognize.'" *Young v. Dretke*, 356 F.3d 616, 627 (5th Cir. 2004) (quoting *Nix*, 475 U.S. at 186). Shaw "seeks relief from counsel's failure to meet a valid legal standard," see *Lafler*, 132 S. Ct. at 1387, and the Indiana legislature's later decision to change that standard does not defeat Shaw's ineffectiveness claim. *Fajardo* itself offers some insight into what the state supreme court would have done in the period before the amendment. We do note a division of authority in Indiana over whether the legislature meant for the current, revised version of Section 35-34-1-5 to apply retroactively. *Compare Fields v. Indiana*, 888 N.E.2d 304, 309-10 (Ind. Ct. App. 2008) (holding that the former version of Section 35-34-1-5 and *Fajardo* apply "on direct appeal [even] where the offenses were committed prior to *Fajardo*") *with Hurst v. Indiana*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008) (holding that the statute enacted in reaction to *Fajardo* is retroactive, "[t]hough the legislature did not expressly provide for retroactive application of the amended statute").

The resolution of that debate, however, is not pertinent to our case. No matter what its outcome, fairminded

jurists must agree that Shaw has demonstrated prejudice: he had a reasonable chance of success on appeal but for Miller's deficient performance. The state also cites a case holding that *Fajardo* is not retroactive in a collateral attack, *Leatherwood v. Indiana*, 880 N.E.2d 315, 320 (Ind. Ct. App. 2008), but that decision is irrelevant because the relief to which Shaw is entitled is a new direct appeal. Should Indiana choose to grant this relief, instead of releasing Shaw outright, the Indiana appellate courts will be free to consider all pertinent issues of state law at that time.

\* \* \*

Because Miller's performance was deficient and Shaw suffered prejudice as a result, the decision of the district court is VACATED and the case is REMANDED with instructions to issue a writ of habeas corpus unless the State of Indiana grants Shaw a new appeal within 120 days after issuance of the mandate.