**FILED**

Aug 17 2017, 5:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Michael K. Ausbrook
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Troy Shaw,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 17, 2017<br><br>Court of Appeals Case No.<br>02A03-1312-CR-505<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Frances C. Gull, Judge<br><br>The Honorable John F. Surbeck, Jr., Judge<br><br>Trial Court Cause No.<br>02D04-0006-CF-315 |

**Pyle, Judge.**

# Statement of the Case

This case returns to our Court following a ruling on Troy Shaw's ("Shaw") federal habeas petition. Specifically, in 2013, the United States Court of Appeals for the Seventh Circuit ("the Seventh Circuit") concluded that Shaw had been denied the effective assistance of appellate counsel in his direct appeal because counsel had failed to raise an appellate challenge to an amendment to Shaw's charging information. The Seventh Circuit further concluded that Shaw was entitled to a new direct appeal for his 2001 murder conviction.[1] *Shaw v. Wilson*, 721 F.3d 908, 912 (7th Cir. 2013), *reh'g denied, reh'g en banc denied, cert. denied*. In this new appeal, the sole issue for our review is whether the trial court properly allowed the State to amend the charging information seventeen months after the omnibus date.[2] Finding no error, we affirm the trial court's judgment.

We affirm.

# Issue

Whether the trial court properly allowed the State to amend the charging information seventeen months after the omnibus date.

---

[1] IND. CODE § 35-42-1-1.

[2] Shaw raises several other issues, which we will address as preliminary matters before addressing this issue.

# Facts

[3]    The facts supporting Shaw's conviction were set forth as follows in his first

direct appeal:

> Shaw worked for the New River Subscription Service selling
> magazine subscriptions. Eric Werczynski ["Werczynski"] was
> the boss of Shaw's group. On June 5, 2000, Shaw and some of
> his co-workers arrived in Fort Wayne. Part of the group had
> arrived earlier in the day and had rented rooms at the Value
> Lodge on Coliseum Boulevard. Shaw and his co-workers
> arrived, retrieved their luggage from their vehicle, and went to
> obtain room assignments from Werczynski. A man, later
> identified as Brett King ["King"], was discovered in one of the
> rooms rented by Werczynski. Werczynski confronted King
> about his presence in the room and an altercation began. King
> fled the room, but the fight continued out on the walkway. King
> eventually escaped and ran down the stairs into the parking lot.
> Werczynski yelled for someone to "get the motherfucker." Tr. at
> 165. Steve Johnson ["Johnson"] and Chris Starling, both New
> River employees, chased King across the parking lot into a ditch
> where Starling tackled King. Werczynski arrived and the fight
> with King began again. Several other New River employees
> joined in the fight against King, including Shaw, Johnson and
> Ben Brooks ["Brooks"]. . . . King's dead body was discovered
> later in the day on June 5, 2000, lying face down in the same
> ditch where the fight took place.

*Shaw v. State*, No. 02A03-0205-CR-132 (Ind. Ct. App. May 7, 2003).

[4]    On June 9, 2000, the State charged Shaw with Class B felony aggravated

battery. The trial court set the omnibus date for July 31, 2000. On November

30, 2001, apparently after further investigating the case and learning more about

Shaw's active role in King's beating and contribution to King's death, the State

filed a motion to amend the charging information to charge Shaw with murder rather than aggravated battery. Both the aggravated battery and murder charges were based on Shaw striking and kicking King, which led to King's death. Shaw had notice of the amendment, and his trial counsel objected to it on the basis of INDIANA CODE § 35-34-1-5 (1982), which, at that time, provided that an amendment of substance could be made up to thirty days before the omnibus date and that an amendment of form could be made even later if not prejudicial. The trial court granted the State's motion to amend the charging information after a hearing. The trial court also granted Shaw's motion for a continuance, and Shaw was given an additional two months to prepare for trial.

[5] At the February 2002 jury trial, Johnson and Brooks testified that Shaw had repeatedly and viciously kicked King in the head and face. Specifically, Johnson testified that as King was on his hands and knees attempting to get up off the ground, Johnson saw Shaw "football kick [King] in the face, in the nose and eye area." (Tr. 252). King went limp, and Johnson observed Shaw kick and stomp King's face, head, and neck at least ten to twelve times. Brooks testified that Shaw kicked King "like a field goal." (Tr. 288). Brooks further explained that he watched Shaw kick King in the head five or six times before Brooks left the scene.

[6] Dr. Joseph Czaja ("Dr. Czaja"), who conducted King's autopsy, testified that King "died of blunt force injury to the head due to multiple blows." (Tr. 340). Dr. Czaja explained that King's face had "multiple bruises . . . . both eyes were essentially swollen shut. Palpitating the face you could feel multiple fractures

of the underlying facial bones." (Tr. 340). Dr. Czaja further explained that King's:

> head was beaten so severely and the brain was shaken up so much that it swelled up, or as we call it, became edemedis with fluid to the point where that volume of the brain was greater than the skull could bear. . . . So the swelling of the brain pressing on the brain stem led to his death.

(Tr. 342).

[7] Fort Wayne Police Department Detective Stacey Jenkins ("Detective Jenkins") testified that during two interviews with Shaw, Shaw had given him several different accounts of what had happened on the day of King's beating and death. In a June 5, 2000 interview, Shaw was initially evasive and said that he had not taken part in the beating because he had been asleep. Later in the interview, Shaw admitted that he had chased King down the motel's exterior stairway, but he denied participating in the beating. During that same interview, Shaw told Detective Jenkins that he had hit King with a closed fist while others in the group were kicking him. During a second interview in January 2001, in the presence of his trial counsel, Shaw stated that he had swung a beer bottle at King as King had run down the motel's exterior stairway. Shaw further explained that after swinging the beer bottle, he had run back upstairs and locked himself in his motel room.

[8] At trial, Shaw testified that he saw Werczynski chasing King and yelling at the magazine sellers to "get [King], kick his ass, kick his motherfucking ass, kill

him, hold him and wait until I get there." (Tr. 392). Shaw explained that he had asked some of the other magazine sellers what was "going on" and was told to "get the f' out of [there]." (Tr. 394). According to Shaw, he went to his motel room and "just fell on the bed" and went to sleep. (Tr. 394). He denied hitting or kicking King. He also denied telling Detective Jenkins that he had been at the ditch during the beating. Shaw further denied telling the detective that he had hit Shaw.

[9] During deliberations, the jury apparently had a question. The court reporter's note explains as follows:

> [J]ury has a question for the Court. Attorneys are called and on their way. Defendant on his way up. Court sends a note to the jurors that he cannot answer any further questions. (nothing on the record).

(Tr. After Closing Statements 16). Six hours later, the jury returned with a verdict convicting Shaw of murder. After defense counsel polled the jurors and the trial court thanked them for their patience and efforts, the trial court stated as follows:

> I would also apologize to you, I'm sure it was frustrating that we were unable to answer your questions. I'm sure as a matter of hindsight you can understand that if we were to answer those questions, had we answered those questions directly as you asked it would be essentially tampering with your deliberations which you are exclusively charged with, and so our getting involved in it would be inappropriate, but at the same time I'm sure it was very frustrating to you that we were not able to answer those questions for you. I appreciate your efforts as you worked through those problems and arrived at a unanimous verdict.

(Tr. After Closing Statements 20). The trial court sentenced Shaw to sixty (60) years.

[10] On direct appeal, a public defender filed a "short brief [challenging only the sufficiency of the evidence to support Shaw's murder conviction] in which he observed that 'there [was] conflicting testimony as to whether the Defendant, Troy Shaw, was in the ditch where Brett King was murdered.'" *Shaw*, 721 F.3d at 912. This Court concluded that we could not reweigh the evidence and affirmed Shaw's conviction. *Shaw*, No. 02A03-0205-CR-132.

[11] Shaw subsequently filed a petition for post-conviction relief wherein he argued that his appellate counsel rendered ineffective assistance of counsel because appellate counsel had abandoned trial counsel's challenge to the validity of the amended charging information. Shaw specifically argued that omitting the claim under INDIANA CODE § 35-34-1-5 constituted deficient performance because the claim was significantly stronger than the sufficiency challenge that appellate counsel had actually made. With respect to prejudice, Shaw contended that the abandoned claim likely would have succeeded if made, and that his conviction would have been vacated. After the post-conviction court denied Shaw's petition, Shaw appealed. This Court concluded that, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), appellate counsel's performance had not been deficient. *Shaw v. State*, 898 N.E.2d 465, 470 (Ind. Ct. App. 2008), *trans. denied*. Specifically, this Court pointed out that at the time of Shaw's appeal, there had been no case law in which a court had invalidated such an amendment to a charging information. *Id.* We further noted that

"appellate counsel would not have been able to demonstrate prejudice because Shaw had been granted a continuance to prepare for trial on the amended charges." *Id.* We therefore affirmed the denial of Shaw's post-conviction petition. *Id.*

[12] After the Indiana Supreme Court denied transfer, Shaw filed a federal habeas petition challenging this Court's application of federal law with respect to his ineffective assistance of appellate counsel claim. The United States District Court for the Southern District of Indiana ("the District Court") denied Shaw's petition in 2012. *Shaw v. Mize*, No. 2:09-cv-325-JMS-WGH, 2012 WL 527454, at *2 (S.D. Ind. Feb. 16, 2012). However, the Seventh Circuit subsequently concluded that Shaw's appellate counsel had been deficient and that Shaw had suffered prejudice as a result of the deficiency. *Shaw*, 721 F.3d at 919. Specifically, the Seventh Circuit explained that appellate counsel's performance was deficient because:

> [A] competent lawyer in Indiana should have recognized that there was a state statute under which relief for his client was possible and would have pursued that theory on appeal. An argument about the validity of the [S]tate's effort to amend the indictment would have been materially stronger than the frivolous sufficiency-of-the-evidence point that [appellate counsel] raised. . . . [T]he sufficiency argument that [appellate counsel] made on Shaw's behalf was so weak that pursuing it was the equivalent of filing no brief at all. . . . [Appellate counsel] should have learned of the potential claim while reviewing the trial record because trial counsel carefully preserved it by objecting (and, as Indiana case law requires, requesting a continuance. . . .) With that much accepted, there is

no further role for the federal judiciary: whether the Indiana appellate court would have been persuaded, or if not, whether the Indiana Supreme Court would have granted transfer, is immaterial.

*Id*. at 914, 915, 916.

[13] On the question of prejudice, the Seventh Circuit explained that:

> *Strickland* requires us to ask whether there is 'a reasonable probability that, but for [appellate counsel's] unprofessional errors, the result of [Shaw's direct appeal] would have been different.' *See* 466 U.S. at 694, 104 S.Ct. 2052. In assessing prejudice, we must bear in mind once again that we are making a comparative inquiry about counsel's choices; we are not resolving any issue of state law, and we are not telling the Indiana judiciary how it should approach this issue. Prejudice exists, however, if counsel bypassed a nonfrivolous argument, that, if successful, would have resulted in the vacation of Shaw's conviction . . . .

*Id.* at 918.

[14] When analyzing prejudice and whether there was a reasonable probability that but for appellate counsel's error, the result of Shaw's direct appeal would have been different, the Seventh Circuit acknowledged that at the time of Shaw's appeal, no Indiana appellate court had ever invalidated an amendment under the statute. Nevertheless, the Seventh Circuit held that Shaw was prejudiced by appellate counsel's deficiency. *Id.* at 919. To reach this determination of prejudice, the Seventh Circuit relied on *Haak v. State*, 695 N.E.2d 944 (Ind. 1998) and *Fajardo v. State,* 859 N.E.2d 1201 (Ind. 2007).

First, the Seventh Circuit interpreted *Haak*, which was decided before Shaw's first direct appeal, to "h[o]ld unequivocally that if an amendment 'was of substance, or prejudicial to the defendant even if of form, it was impermissible under the statute' from 30 days before the omnibus date." *Shaw*, 721 F.2d at 911 (quoting *Haak*, 695 N.E.2d at 951). Second, the Seventh Circuit noted that four years after Shaw had lost his direct appeal, the Indiana Supreme Court revisited the issue of untimely amendments of substance in *Fajardo*, 859 N.E.2d at 1201. There, the trial court had allowed the State to add a second count of child molestation to the information after it concluded that the amendment would not prejudice Fajardo.[3] However, the Indiana Supreme Court explained that "because the challenged amendment in this case sought to modify the original felony information in matters of substance, it was permissible only up to thirty days *before* the omnibus date," regardless of prejudice. *Id.* As a result, the Indiana Supreme Court vacated Fajardo's second conviction.[4] *Id.*

---

[3] This second count was based on different acts committed on a different day.

[4] In *Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008), *trans. denied*, we noted that:

> The [Indiana] legislature immediately responded to *Fajardo* by amending the statute, effective May 8, 2007, to reflect the pre-*Fajardo* law (i.e., amendments of substance permitted any time before trial so long as the defendant's rights are not prejudiced). Thus, *Fajardo* was superseded by statute in less than four months. This prompt return to pre-*Fajardo* law indicated the urgency in the legislature's desire to negate the effects of *Fajardo*.

Although the legislature did not expressly provide for the retroactive application of the amended statute, this Court concluded that we were "confident this was the clear intent of such legislation." *Id.*

[16] Hypothesizing that *Fajardo* "offer[ed] some insight into what the state supreme court would have done in the period before the amendment," the Seventh Circuit concluded that Shaw had demonstrated a "reasonable chance of success on appeal but for [appellate counsel's] deficient performance." *Id.* at 919. Concluding that Shaw had received ineffective assistance of appellate counsel, the Seventh Circuit explained as follows:

> Shaw is entitled to a new direct appeal. Should Indiana choose to grant this relief, instead of releasing Shaw outright, the Indiana appellate courts will be free to consider all pertinent issues of state law at that time. Because [appellate counsel's] performance was deficient and Shaw suffered prejudice as a result, the decision of the district court is VACATED and the case is REMANDED with instructions to issue a writ of habeas corpus unless the State of Indiana grants Shaw a new appeal within 120 days after issuance of the mandate.

*Id.* at 919-20.

[17] On December 19, 2013, after the Seventh Circuit had denied the State's petitions for rehearing and rehearing en banc, the State filed under Shaw's post-conviction appeal cause number an emergency notice of pending proceedings before the United States Supreme Court following federal habeas corpus proceedings. In that notice, the State asked this Court to grant Shaw a new direct appeal by January 3, 2014, which was 120 days from the date that the

Seventh Circuit had issued its appellate mandate. The State also asked this Court to hold the new appeal in abeyance so that it could pursue a writ of certiorari from the United States Supreme Court.

[18] On December 30, 2013, the Clerk of the Supreme Court, Court of Appeals, and Tax Court ("the Clerk") received Shaw's motion for alternative relief, which Shaw claims was a response to the State's notice. According to Shaw, his motion "raised questions of jurisdiction, res judicata, and judicial estoppel . . . [and] . . . opposed holding [Shaw's] appeal in abeyance." (Shaw's Br. 16). Our docket entry reveals that the motion exceeded the page limit and did not contain a word count certificate. Because of the defects, Shaw's motion was not officially filed.

[19] The following day, December 31, 2013, this Court ordered the Clerk to open a direct appeal under a new appellate cause number and to hold that appeal in abeyance pending further order. We also ordered the State to file a status report regarding the certiorari proceedings and to give this Court notice of any ruling on the certiorari petition within three days receipt of any such ruling.

[20] On January 3, 2014, the Clerk sent a notice of defect to Shaw regarding his motion for alternative relief. On January 13, 2014, Shaw filed a motion for relief from the appellate rules wherein he "requested that he be relieved from having to refile his motion with a word count because that would have served no useful purpose; he also provided a word count for the motion that was well under the 4,200 words provided by Indiana Appellate Rule 43(G)(2)." (Shaw's

Br. 17). The appellate docket also reveals that on February 12, 2014, the Clerk issued a "notice of return" with respect to Shaw's motion for alternative relief. Specifically, the docket provides that "[p]er standing instruction of the Court of Appeals, one (1) received-stamped copy of the Verified Motion for Alternative Relief has been retained in case file, all other copies returned."

On June 17, 2014, after the United States Supreme Court had denied certiorari, the State filed a notice of termination of proceedings. Shortly thereafter, this Court remanded the case to the trial court with instructions to hold a hearing with Shaw present to advise him of his right to a new direct appeal and appointment of appellate counsel. In August 2014, this Court accepted the trial court's order appointing counsel for Shaw's new direct appeal. In February 2015, Shaw asked the trial court for funds to investigate the juror's questions during deliberations. After the trial court concluded that it did not have jurisdiction to grant the request, in March 2015, Shaw asked this Court for funds for an investigator. This Court denied the request. Shaw and the State have now filed their appellate briefs in this second appeal of Shaw's 2001 murder conviction. We now proceed to the merits of Shaw's claim.

## Decision

At the outset, we dispose of several preliminary matters. First, Shaw argues that this appeal should be dismissed because: (1) this Court "had no power to order a new appeal out of thin air," (Appellee's Br. 18); (2) res judicata bars a new trial where this Court decided that Shaw was not entitled to a new appeal in Shaw's State post-conviction litigation; (3) the State was judicially estopped

from requesting the relief it opposed in Shaw's State post-conviction litigation; and (4) the "correct relief for an ineffective assistance of counsel claim is a new trial, not a new appeal," (Appellee's Br. 21).

[23] All of these arguments stem from the Seventh Circuit's opinion that granted Shaw relief on his federal habeas petition. Specifically, it was the Seventh Circuit that offered the State the choice of either granting Shaw a new direct appeal or releasing him. If Shaw believed the Seventh Circuit's order was in error, Shaw should have sought relief in the federal courts. Shaw's attempts to undermine the Seventh Circuit's order in state court amount to an impermissible collateral attack. *See Ind. Dep't of Envtl. Mgmt. v. Conard*, 614 N.E.2d 916, 922 (Ind. 1993) ("A collateral attack on a judgment is an attack made in a proceeding that has independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary for the success of the motion."); *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1196 (Ind. Ct. App. 2003) (noting that an action in a state court that attempts to undermine a federal court decision is an impermissible collateral attack).

[24] Shaw also challenges two rulings made by this Court. Specifically, Shaw first argues that he was "effectively denied his federal right to a free transcript to pursue this appeal" when this Court denied his request for funds to hire an investigator to help him "reconstruct the record with respect to jury questions during deliberations." (Shaw's Br. 20, 21). Shaw's request for funds effectively amounted to a desired attempt to impeach the jury's verdict. However, it has

long been established in Indiana that a jury's verdict may not be later impeached by the testimony or affidavit of the jurors who returned it.[5] *Pattison v. State*, 958 N.E.2d 11, 21 (Ind. Ct. App. 2011), *trans. denied*. The Indiana Supreme Court has explained the policy concerns behind this rule as follows:

> If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find

---

[5] Although this is a generally recognized rule, Indiana Evidence Rule 606(b) provides three exceptions:

> (1) *Prohibited Testimony or Other Evidence.* During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or of any juror's mental processs concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

> (2) *Exceptions.* A juror may testify about whether:

>> (A) any juror's drug or alcohol use;
>> (B) extraneous prejudicial information;
>> (C) an outside influence was improperly brought to bear on any juror; or
>> (D) a mistake was made in entering the verdict on the verdict form.

In addition, in *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855, 869 (2017), the United States Supreme Court held that:

> [W]here a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence in the juror's statement and any resulting denial of the jury trial guarantee.

Because Shaw raises none of these exceptions, we need not address them.

themselves in a contest of affidavits and counter-affidavits and arguments and rearguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties, litigant and an unconscionable burden upon citizens who serve on juries.

*Stinson v. State*, 262 Ind. 189, 198, 313 N.E.2d 699, 704 (1974).

[25] Here, at Shaw's trial, when the jurors had a question during deliberations, the trial court sent them a note and told them that it could not answer any questions. After the jury had delivered its verdict, the trial court stated that the jury probably now understood that had the trial court answered its questions, the court would have "essentially [been] tampering with the [jury's] deliberations." (Tr. After Closing Statements 20). Shaw requested state funds to investigate what had occurred during deliberations, which would have been improper. Accordingly, this Court did not improperly deny Shaw's request for funds.

[26] Shaw also argues that this Court improperly failed to rule on his motions for alternative relief and for relief from the appellate rules. Specifically, Shaw contends that because "[n]either motion has apparently . . . been considered by this Court, [Shaw was not only] not given an opportunity to be heard at a meaningful time in a meaningful manner, he was given no opportunity to be heard at all." (Shaw's Br. 30). However, neither of Shaw's motions was ever officially filed. The motion for alternative relief was defective because it exceeded the page limit and did not contain a word count certificate. The Clerk sent a notice of defect to Shaw regarding this motion; however Shaw's

subsequent motion for relief from the appellate rules did not correct the defect and was returned to Shaw. Because neither of these motions was officially filed, this Court had nothing to rule on, and we find no error.

[27] We now turn to the merits of Shaw's direct appeal as ordered by the Seventh Circuit. Shaw contends that the trial court erred when it allowed the State to amend the charging information seventeen months after the omnibus date. Our starting point is INDIANA CODE § 35-34-1-5, which, the version in effect at the time of Shaw's offense, provided:

> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:

>> (1) thirty (30) days if the defendant is charged with a felony; or

>> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors; before the omnibus date. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

> (c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

> (d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the

court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense.

[28] Shaw argues that the "State's amendment, substituting a murder charge for aggravated battery, changed both the offense charged and the penalty and was therefore impermissibly late under INDIANA CODE § 35-34-1-5." (Shaw's Br. 33). The gravamen of this argument is that the amendment was substantive and that it was untimely because it was filed seventeen months after the omnibus date.

[29] However, even assuming that the amendment to Shaw's information was substantive, cases decided at the time of Shaw's 2003 direct appeal regularly interpreted INDIANA CODE § 35-34-1-5 to allow substantive amendments so long as the substantial rights of the defendant were not prejudiced. *See Townsend v. State*, 753 N.E.2d 88, 94 (Ind. Ct. App. 2001),[6] *abrogated by Fajardo*,

---

[6] *Townsend* recognized that in *Haak,* 695 N.E.2d at 951, the Indiana Supreme Court had stated that substantive amendments may not occur after specified times in advance of the omnibus date as provided in subsection (b). The Seventh Circuit concluded that this statement was an "unequivocal holding." *Shaw,* 721 N.E.2d at 911. We disagree with this conclusion for two reasons. First, we find that the Indiana Supreme Court's statement was dicta where the amendment was found to be one of form rather than substance. *See Haak,* 695 N.E.2d at 951. Second, we agree with *Townsend*, 753 N.E.2d at 94, that:

> [W]ere we to read *Haak* as prohibiting any substantive changes after the specified times in subsection (b), the provisions for a continuance would be largely unnecessary. *See State v. Gullion*, 546 N.E.2d 121, 123 (Ind. Ct. App. 1989) ("To hold that [I.C. § 35-34-1-5] does not permit charges to be amended for other than form anytime after 30 days prior to the omnibus date would make subsection (d) superfluous.").

859 N.E.2d at 1206-07, (citing *Kindred v. State*, 540 N.E.2d 1161, 1170 (Ind. 1989), *abrogated by Fajardo*, 859 N.E.2d at 1206-07); and *Todd v. State*, 566 N.E.2d 67, 69 (Ind. Ct. App. 1991), *abrogated by Fajardo*, 859 N.E.2d at 1206-07). *See also Brown v. State*, 728 N.E.2d 876, 879-80 (Ind. 2000), *abrogated by Fajardo*, 859 N.E.2d at 1206-07; *Wright v. State*, 593 N.E.2d 1192, 1197 (Ind. 1992), *cert. denied*, 506 U.S. 1001 (1992), *abrogated by Fajardo*, 859 N.E.2d at 1206-07; *Haymaker v. State*, 528 N.E.2d 83 (Ind. 1988), *abrogated by Fajardo*, 859 N.E.2d at 1206-07; *Hegg v. State*, 514 N.E.2d 1061 (Ind. 1987), *abrogated by Fajardo*, 859 N.E.2d at 1206-07; *Prewitt v. State*, 761 N.E.2d 862 (Ind. Ct. App. 2002); *Tripp v. State*, 729 N.E.2d 1061, 1064 (Ind. Ct. App. 2000), *abrogated by Fajardo*, 859 N.E.2d at 1206-07.

[30]     Both *Prewitt* and *Tripp* are instructive in Shaw's second direct appeal. In the *Prewitt* case, which was decided one year before Shaw's first direct appeal, Prewitt asked a police officer working undercover at a public housing complex if the officer would accept his trade of steaks and cigarettes for cocaine. The officer followed Prewitt to his van, and when Prewitt's accomplice showed the officer the steaks and cigarettes, the officer arrested Prewitt and his accomplice.

---

*Townsend* further pointed out that only a few months prior to *Haak*, the Indiana Supreme Court had stated in *Sides v. State*, 693 N.E.2d 1310, 1313 (Ind. 1998), *abrogated by Fajardo*, 859 N.E.2d at 1206-07, that "[u]ltimately the question [was] whether the defendant had a reasonable opportunity to prepare for and defend against the charges."

Prewitt was charged with Class C felony conspiracy to possess cocaine in January 2000. The omnibus date was set for March 14, 2000. On November 15, 2000, eight months after the omnibus date, the State filed a motion to amend the information to add Count II, Class C felony attempted possession of cocaine. The State explained that the amendment "was based upon the very same fact circumstances. We're not alleging new facts. We are simply alleging an alternative [to] the conspiracy conviction . . . the Jury could also find that it legally fits the definition of an Attempt crime . . . ." *Id.* at 867. The trial court granted the motion after a hearing. At a pre-trial hearing on November 27, 2000, the State orally moved again to amend the information. The substance of the charges was not changed by this second amendment; however, the charges were elevated from Class C felonies to Class B felonies due to the proximity to the family housing unit. The trial court granted the State's request to amend the charges, and Prewitt's trial on the two Class B felonies began six weeks later after several delays. A jury convicted Prewitt of both charges; however, the conspiracy verdict was later vacated by the trial court.

[31] On appeal, Prewitt argued that the trial court had erred when it allowed the State to amend the charging information to add an additional count eight months after the omnibus date and two weeks prior to a scheduled trial date. This Court acknowledged the general rule that an information may not be amended to change the theory of the case or the identity of the charged offense. *Id.* at 868. However, we further pointed out that "an amendment that does not prejudice the defendant's substantial rights, including the right to notice and an

opportunity to be heard, is permissible." *Id.* We pointed out that Prewitt had been afforded notice of the proposed amendment and an opportunity to be heard. *Id.* In addition, the facts supporting the new charge were the same facts supporting the original charge, and Prewitt had been afforded nearly two more months to prepare. *Id.* at 868-69. We concluded that Prewitt had failed to demonstrate that his substantial rights were affected and that the trial court did not err in allowing the State to amend the charging information to include Count II, attempted possession of cocaine. *Id.* at 869.

[32] Similarly, in the *Tripp* case, Tripp was charged with operating a motor vehicle with a blood alcohol content greater than .10%. After the omnibus date and twenty-eight days before trial, the State moved to amend the charging information to add a count of operating a vehicle while intoxicated. Before trial, Tripp filed a motion to dismiss the amended count, which the trial court denied. Tripp subsequently filed a motion to dismiss the first count and to certify for interlocutory appeal the issue of whether the information was properly amended to include a second count.[7] The trial court granted Tripp's motion to dismiss Count I of the information, leaving only the amended Count II. The trial court also certified the issues for interlocutory appeal.

[33] On interlocutory appeal, Tripp argued that the trial court had erred in granting the State's motion to amend the information. As in *Prewitt*, we acknowledged

---

[7] Tripp also sought an interlocutory appeal of the trial court's denial of his request for a jury trial.

the general rule that an information may not be amended so as to change the theory of the case or the identity of the offense charges. *Id.* at 1064. However, we further noted that "an amendment that does not prejudice substantial rights of the defendant is permissible. These substantial rights include the right to notice and an opportunity to be heard and contest the amendment." *Id.* The requirement of an opportunity to be heard is satisfied when the defendant is given adequate time to object and request a hearing after proper notice. *Id.* at 1065. We also pointed out that for substantive amendments, the court should grant a continuance, if requested, to allow the defendant adequate time to prepare for trial. *Id.* at 1064.

[34] After analyzing Tripp's interlocutory claim, we concluded that the request to amend the information by including an additional charge was an amendment of substance as the change was essential to making a valid charge. *Id.* We noted that such amendments were permissible provided the substantial rights noted above were not offended. *Id.* Ultimately the question was whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id.* at 1065. We concluded that Tripp's substantial rights were not prejudiced by the amendment as he was given notice of the amended information, he was given an opportunity to challenge it, and the trial court continued the trial to give Tripp adequate time to prepare his defense to the new charge. *Id.* at 1064-65. Having decided the interlocutory issues, we remanded the case to the trial court to proceed to a jury trial. *Id.* at 1066.

[35] Turning now to the facts of this case, the State initially charged Shaw with Class B felony aggravated battery. The trial court set the omnibus date for July 21, 2000. On November 30, 2001, apparently after learning how Shaw's role in King's beating contributed to his death, the State filed a motion to amend the charging information to charge Shaw with murder rather than aggravated battery. Shaw had notice of the amendment, and his trial counsel objected to it. The trial court granted the State's motion after a hearing. The trial court also granted Shaw's motion for a continuance, and Shaw was given an additional two months to prepare for trial.

[36] Here, as in *Prewitt* and *Tripp,* Shaw was given notice of the amendment, an opportunity to challenge it, and adequate time to prepare for trial. In addition, as in *Prewiit*, the facts supporting the new charge were the same facts supporting the original charge. Further, Shaw's defense did not change. Whether he was charged with aggravated battery or murder, Shaw argued that he was not at the scene and did not participate in beating King. Shaw has failed to demonstrate prejudice to his substantial rights resulting from the untimeliness of the amendment. The trial court did not err when it allowed the State to amend the charging information.

[37] Affirmed.

Baker, J., and Mathias, J., concur.